Filed 5/31/24  P. v. Jacobs CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>ALBERT LEE JACOBS,<br><br>　　Defendant and Appellant. | B321256<br><br>(Los Angeles County Super. Ct. No. BA156398) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.

In 2000, a jury convicted defendant and appellant Albert Lee Jacobs of first degree murder and found the murder was committed during the commission of a robbery. In 2019, appellant filed a petition for resentencing under former Penal Code section 1170.95 (now section 1172.6). [1] After issuing an order to show cause and conducting an evidentiary hearing, the trial court denied the petition. The trial court concluded that the People had proven beyond a reasonable doubt that appellant was a major participant in the robbery and acted with reckless indifference to human life. Appellant challenges the sufficiency of evidence supporting the trial court's findings, and he asserts the trial court erred in failing to consider the impact of his youth at the time of the offense. We affirm.

## BACKGROUND
## A.    Information, Trial Evidence, Verdict, and Appeal

On August 17, 1996, police found the decomposing body of Wayne Rainey (Rainey) in the bedroom of his apartment. Rainey's hands and feet were bound, and his eyes and mouth were covered with duct tape. A knife was found under his body, and an electrical cord was around his neck. The coroner determined the cause of death was probable strangulation and multiple stab wounds.

The operative amended information alleged that appellant murdered Rainey, used a knife in the commission of the murder,

---

[1]    Effective June 30, 2022, former Penal Code section 1170.95 was renumbered 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) We refer to the current statutory numbering throughout this opinion. All further statutory references are to the Penal Code, unless otherwise indicated.

2

and the murder was committed while appellant was an accomplice in the commission of a robbery (§ 190.2, subd. (a)(17)).

At trial, the prosecution relied primarily on the testimony of Algerina Stewart (Stewart) and Akeisha Bowman (Bowman), codefendants who had pled guilty to voluntary manslaughter.[2] They testified to the following facts.

Rainey and Stewart were in a non-monogamous relationship. Stewart was also in a sexual relationship with appellant and spent the night with him on August 13, 1996. The following morning, Stewart and Rainey argued about Stewart having relations with other men. Rainey punched her in the mouth and then raped her.

Stewart drove to the apartment of her friend, Bowman, and told her about the rape. The same day, appellant,[3] Herman Farris (Farris), and Phillip Thompson (Thompson) were together at Bowman's home, where they learned about the rape. Farris asked Bowman for duct tape, which Bowman obtained for him.

Stewart and Bowman then drove to Rainey's apartment. Stewart accompanied Rainey into his bedroom while Bowman remained in the living room. Stewart directed Bowman to page a

---

[2] At trial, appellant moved for judgment of acquittal pursuant to section 1118.1, asserting there was insufficient evidence to corroborate the accomplice testimony of Bowman and Stewart. (See § 1111 [A conviction cannot rely "upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense . . . ."].) The trial court denied the motion, and we affirmed. (*People v. Jacobs* (Apr. 20, 2001, No. B141317) [nonpub. opn.] (*Jacobs I*), at pp. 5–8.)

[3] At trial, appellant and some of the witnesses referred to Farris, Thompson, and appellant by their nicknames. Appellant was known as No Brain. Farris was known as OBG. Thompson was known as No Name.

certain number and leave Rainey's address, and Bowman paged the number four or five times.

Farris, Thompson, and appellant entered Rainey's apartment soon thereafter. One of the men had a knife, and all wore white socks on their hands. The men ordered Bowman and Stewart to lie on the living room floor, and they entered Rainey's bedroom. The men said, "Shut the fuck up. Shut the fuck up. You better not move. Shut the fuck up." They demanded Rainey tell them if he sold marijuana and the location of his money.

Thompson returned to the living room, grabbed some electrical cords, and reentered the bedroom. Rainey was naked on the bed with his hands and feet bound. His eyes and mouth were covered with duct tape. Stewart entered the bedroom, picked up a wood or metal object, and struck Rainey across the face.

The group ransacked Rainey's home. Appellant and the others gathered Rainey's belongings into trash bags. Appellant found a pistol and put it in the waistband of his pants. Bowman, Stewart, Thompson, and Farris loaded the trash bags into Farris' car and into Rainey's Jeep and Bronco.

Appellant reentered the bedroom, wrapped a cord around Rainey's neck, tugged it for a long time, and then let go. After checking for a pulse, appellant said, "[M]an, this fool ain't dead." He choked Rainey again.

The group drove the cars to an apartment building with a garage on Menlo Avenue. The men unloaded the cars in the garage. The belongings taken from Rainey included televisions, VCRs, camcorders, a gaming console, and compact discs.

Later that night, appellant went to Bowman's home and asked her for cooking grease to burn Rainey's Bronco. The police

4

later found the vehicle burned, with its tires, wheels, battery, upholstery, and radio missing.

The next day, appellant spoke to Bowman. She asked, "Did you kill him?" Appellant said, "[Y]eah." She asked, "[W]hat happened, how you [*sic*] do it?" Appellant told her, "First time I strangled him, he wouldn't die, and then I strangled him a second time. He still wouldn't die." Appellant said he took the knife and stabbed Rainey in the neck, but Rainey would not die. Appellant said, "I stabbed him again on the other side of his neck and he wouldn't die."

Appellant testified at trial to the following facts. Appellant was not involved in Rainey's death. Appellant went to Rainey's home, but he believed the plan was only to "stomp [Rainey] out," meaning three men would punch and kick Rainey, possibly to the point of breaking his ribs and knocking out his teeth. Thompson was not part of the group that went to Rainey's home, and the third man was someone named Dirty Rat. Dirty Rat held Rainey at gunpoint while Farris bound Rainey with duct tape. The group spent about an hour at Rainey's home. Appellant did not take Rainey's belongings. Appellant and the others went to the garage of the Menlo Avenue apartment, where appellant had slept many times, and as recently as the previous night. When the Bronco's door was opened, appellant saw a television set fall to the ground and break; however, nothing was unloaded in the garage. Appellant did not obtain cooking grease from Bowman, and he did not know how Rainey's Bronco was burned.

On March 13, 2000, a jury found appellant guilty of first degree murder. The jury found true the allegation that the murder occurred during the commission of a robbery, but it found not true the allegation that appellant personally used a knife.

5

Appellant was sentenced to life imprisonment without the possibility of parole.

Appellant filed an appeal, and in April 2001, the judgment was affirmed. (*Jacobs I*, *supra*.)

## B.     Section 1172.6 Proceedings

In 2019, appellant filed a petition for resentencing pursuant to section 1170.95. The parties stipulated that a prima facie case for relief had been established. The parties filed briefs, and an evidentiary hearing was conducted on May 17, 2022. A CD with the reporter's and clerk's transcripts from trial was admitted into evidence. Appellant was present at the hearing but did not testify. The trial court filed its written order denying the petition on May 25, 2022.

## DISCUSSION

Appellant asserts two errors in the trial court's denial of his petition. First, appellant contends that the evidence did not support the trial court's conclusion that he participated in the robbery as a major participant acting with reckless indifference to human life. Second, appellant was 21 at the time of the murder, and he contends the trial court erroneously reached its conclusion without considering his youth.

## A.     Governing Law: Section 1172.6

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), the Legislature significantly narrowed the scope of the felony-murder rule." (*People v. Strong* (2022) 13 Cal.5th 698, 703 (*Strong*).) "It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory

6

but who could not have been convicted under the new law." (*Ibid*.) "Resentencing is available under the new law if the defendant neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2.'" (*Id*. at p. 703, citing § 189, subd. (e) and § 1172.6 and Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10).)

Once a petitioner establishes a prima facie case for relief under section 1172.6 and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing. (*Strong, supra*, 13 Cal.5th at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . ." (*People v. Cooper* (2022) 77 Cal.App.5th 393, 411.) At the evidentiary hearing, the trial court "act[s] as an independent fact[ ]finder" and may consider evidence admitted at any prior hearing or trial that is admissible under current law, or any new or additional evidence submitted by the parties. (§ 1172.6, subd. (d)(3).) The trial court "must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard . . . ." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

In 2015 and 2016, the California Supreme Court "'substantially clarified the law governing findings under Penal Code section 190.2, subdivision (d)'" in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks)* and *People v. Clark* (2016) 63 Cal.4th 522

(*Clark*).  (*People v. Oliver* (2023) 90 Cal.App.5th 466, 478 (*Oliver*), citing *Strong*, *supra*, 13 Cal.5th at p. 706.)  "*Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*Oliver*, *supra*, 90 Cal.App.5th at p. 478, citing *Strong*, *supra*, 13 Cal.5th at pp. 706–707.)

 *Banks* considered "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant." (*Banks*, *supra*, 61 Cal.4th at p. 794.)  Our Supreme Court identified factors that should be considered in making that determination: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Id.* at p. 803, fn. omitted.)  However, whether a defendant acted as a major participant depends on the totality of the circumstances.  (*Id.* at p. 802.)  Moreover, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.  All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.'  [Citation.]" (*Id.* at p. 803.)

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*In re Scoggins (*2020) 9 Cal.5th 667, 676–677 (*Scoggins*), citation omitted.) "Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.'" (*Ibid*., citation omitted.) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at pp. 676–677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

In *Clark*, the California Supreme Court listed factors to consider when determining whether reckless indifference existed: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra,* 9 Cal.5th 667, 677 [summarizing *Clark* factors].) As with a major participant finding, "'[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.'" (*Clark, supra*, 63 Cal.4th at p. 618.)

We review the trial court's denial of a section 1172.6 petition for substantial evidence.[4] (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).) Under this standard, we review the record "'"in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" (*Reyes, supra,* 14 Cal.5th at p. 988, citations omitted.) "'We presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial.'" (*In re Harper* (2022) 76 Cal.App.5th 450, 460 (*Harper*), quoting *Clark, supra,* 63 Cal.4th at p. 610.) We do not resolve credibility issues or conflicts in the evidence. (*People v. Schell* (2022) 84 Cal.App.5th 437, 442.)

---

[4] Appellant urges us to reject the substantial evidence standard and conduct an independent review of the record, relying on *People v. Vivar* (2021) 11 Cal.5th 510. We decline to do so for two reasons. First, the *Vivar* court explicitly limited the effect of its ruling: "Our decision addresses only the independent standard of review under [Penal Code] section 1473.7. Nothing we say here disturbs a familiar postulate: when reviewing a ruling under the substantial evidence standard, 'an appellate court should defer to the factual determinations made by the trial court,' regardless of 'whether the trial court's ruling[s are based] on oral testimony or declarations.'" (*Id.* at p. 528, fn. 7, quoting *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.) Second, multiple Courts of Appeal have rejected the argument that a trial court's findings at a section 1172.6 evidentiary hearing, when based on a cold record, should be reviewed independently in light of *Vivar*. (See, e.g., *Oliver, supra*, 90 Cal.App.5th at pp. 479–480; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232–233, *People v. Mitchell* (2022) 81 Cal.App.5th 575, 590–591 (*Mitchell*); *Clements*, *supra*, 75 Cal.App.5th at pp. 283, 302.)

**B.** **Substantial Evidence Supports the Finding that Appellant Was a Major Participant Acting With Reckless Indifference to Human Life**

Appellant argues that there is insufficient evidence to support two factual findings the trial court made in reaching the conclusion that appellant was a major participant in the underlying felony who acted with reckless indifference to human life: (1) appellant strangled Rainey and contributed to Rainey's death, and (2) appellant participated in the crime from beginning to end. Appellant asserts that the trial court was required to view the evidence "through the lens of what we know the jury saw during the trial," but instead, made findings that contradicted determinations made by the jury. Appellant also contends that the jury "rejected the conflicted and inconsistent testimony of Bowman and Stewart . . . ," and seems to suggest that it was error for the trial court to accept their testimony "when the jury clearly felt otherwise . . . ."

As a preliminary matter, appellant is incorrect to suggest the trial court was required to speculate as to how the jury saw the evidence and then answer the question, "Would the same jury today . . . have made a true finding on the robbery special circumstance?"[5] "The question for the trial court was whether the evidence, as of the time of the resentencing hearing, established murder as now defined and beyond a reasonable

---

[5] We note that appellant's position on the deference owed to prior jury findings has changed significantly from what he argued below. At the evidentiary hearing, he urged the trial court to "not accept[ ] the facts as found true by the jury and then determine[ ] whether those facts would support a guilty verdict under current theories of culpability" but instead "com[e] to its own conclusions regarding what the facts are as an independent fact finder." ~(RT 914:17-915:13.) ~

11

doubt; it does not require the trial court to speculate how the . . . jury might have ultimately decided the case." (*People v. Wilson* (2023) 90 Cal.App.5th 903, 917.) The trial court's role was to act as an independent fact finder, make its own credibility determinations, and resolve contradictions in the evidence. (See *Clements*, *supra*, 75 Cal.App.5th at p. 298.)

In this case, the trial court relied upon substantial evidence to support the conclusion appellant was a major participant, examining each *Banks* factor. The court found appellant, Farris, and Thompson knew each other well, as they were good friends who would often hang out together. Appellant participated in the initial discussion about the rape and what should be done to Rainey. He was at Bowman's home when Farris acquired duct tape, and he rode with Farris and Thompson to the victim's home. They put socks on their hands before entering, and one of them had a knife. Appellant stormed into Rainey's bedroom and was present when Rainey was threatened and bound with duct tape. Appellant helped to ransack the home, took a gun, and bagged other items. Appellant strangled Rainey with an electrical cord. He did nothing to stop the violence, did not render aid to Rainey, and did not call the police for help. Instead, bags of stolen items were loaded into cars, two of which belonged to Rainey. The group drove to a location where appellant slept and unloaded Rainey's property into the garage. Shortly thereafter, appellant asked Bowman for cooking oil to burn the Bronco, which later was found stripped and burnt.

The trial court also relied upon substantial evidence in determining appellant acted with reckless indifference to human life. The trial court recognized that many of the findings it made during its analysis of the *Banks* factors were relevant to its

12

analysis of *Clark* factors.  It reiterated its findings related to appellant's knowledge of his cohorts, his presence during the crime, his failure to aid the victim, and what appellant did after lethal force was used.  The trial court also found the duration of the crime was significant, as it was daylight when the group entered Rainey's home and dark when they left.  And, appellant took no steps to minimize the risk of violence, but instead, was aggressive and ultimately strangled Rainey with an electrical cord.

We disagree with appellant's suggestion that jury findings precluded the resentencing court from finding that appellant strangled Rainey and participated in the robbery.  A jury's factual findings embodied in a final criminal judgment may have preclusive effect in a section 1172.6 proceeding, so we examine the verdict to determine if any findings precluded the resentencing court's findings.  (See *People v. Curiel* (2023) 15 Cal.5th 433, 453–454.)

Here, the jury found "true" the allegation that appellant was guilty of a murder committed during a robbery.  We need not determine the preclusive effect of this finding because the resentencing court did not make a contradictory finding.

The first degree murder conviction did not specify a particular theory.  The jury had been instructed it could reach a first degree murder conviction if the murder was perpetrated during a robbery (CALJIC No. 8.21), *or* if appellant perpetrated a "willful, deliberate and premeditated killing with express malice aforethought" (CALJIC No. 8.20).  The prosecutor similarly argued, without objection from the defense, that the jury could reach a first degree murder conviction without unanimity on a single murder theory, so long as it was unanimous on the degree.

The jury heard evidence from which it could have concluded the strangling was a premeditated killing with malice aforethought, and therefore, we decline to infer from the verdict that the jury ruled out appellant as Rainey's killer.

Appellant seems to suggest that comments by the jury foreperson during deliberations exonerated him and should be given preclusive effect. The foreperson stated that the jury was "struggling" with evidence of appellant's involvement in the crimes and "maybe" appellant was a victim "in that the crime he went to perpetrate, that he perpetrated, never occurred or accelerated." As to appellant's lack of knowledge of his cohort's intent to rob Rainey, the foreperson replied, "That *appears* to be the situation here." (Italics added.)

Appellant cites no authority to support the notion that pre-verdict comments by jurors have preclusive effect. "Struggling," "maybe," and "appears" are not words that a jury would use to indicate a unanimous and final determination. And, even if we were to assume the jurors were of one mind on that day, the record does not reveal whether any minds changed before the verdict was announced three days later. (See *People v. Cooper* (2007) 149 Cal.App.4th 500, 520–521 [to have preclusive effect, a decision must be "final," i.e., "'"'immune, as a practical matter, to reversal or amendment.'"'"]) At most, the foreperson's comments reflected the jury's preliminary views of the evidence, which were later subsumed by the verdict and judgment.[6] Accordingly, we

---

[6] The statutes governing jury verdicts are designed to ensure that jurors' struggles are resolved and its unanimity is confirmed before a verdict becomes final. (See *People v. Bento* (1998) 65 Cal.App.4th 179, 191 [completion of § 1163 and 1164 procedures for recording and reading verdict and polling jury "define the moment of transition for

14

conclude that no prior jury finding precluded the resentencing court from concluding that appellant strangled the victim and was involved in the crime from start to finish.

Appellant's other arguments attack the credibility of Bowman, whose testimony established appellant's strangling of Rainey. Appellant seems to suggest that, because the jury made a not true finding on the knife use allegation, it disbelieved Bowman's testimony that appellant confessed to stabbing Rainey, and because he confessed to strangling Rainey in the same conversation, the trial court could not accept that testimony as credible. We disagree.

Again, the trial court was not bound by the jury's credibility determinations. (See *Clements*, *supra*, 75 Cal.App.5th at p. 298.) Further, the trial court was well within its discretion to find Bowman's testimony credible on some points but not others. *People v. Williams* (1992) 4 Cal.4th 354, 364 ["a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others"].)

Indeed, it is not difficult to see how a trier of fact might conclude that Bowman's testimony was insufficient to establish a stabbing but sufficient to establish a strangling. Bowman's testimony regarding the alleged *stabbing* was that, from a

when a juror may and may not withdraw his or her affirmation of the verdict. Before the verdict is complete . . . , a juror's expressions of doubt or confusion mandate further deliberations"].)

In declining to treat juror comments during deliberations as final findings, we find guidance in an analogous principle—that oral comments by a judge at a hearing are not final findings and cannot impeach a subsequent written ruling. (See, e.g., *Key v. Tyler* (2019) 34 Cal.App.5th 505, 539, fn. 16 [it was error to take judicial notice of prior court's comments at hearing without considering whether they contradicted the court's final decision].)

vantage point outside of Rainey's home, she looked at the bedroom window, and through a red curtain, saw a shadow of a figure moving an arm up and down. In contrast, her testimony regarding the *strangling* was that, from a vantage point in the next room, Bowman could see where Rainey's body was positioned (on his side, facing toward the doorway), where appellant stood when he put the cord around Rainey's neck (behind Rainey's head, with one knee on the bed), and the amount of effort appellant exerted when he twisted the cord around Rainey's neck ("real hard"). This testimony was not impossible or improbable, given appellant's own testimony corroborated Bowman's on other key details of the crimes.

In sum, we discern no error in the trial court's findings that appellant strangled Rainey and that he was physically present from the beginning to the end of the crimes. We do not disturb the trial court's credibility determinations, and we conclude these findings were supported by substantial evidence. Having resolved appellant's challenges to the sufficiency of the evidence, we turn to appellant's contention that the trial court erroneously failed to consider the impact of appellant's youth on his mental state.

## C. Remand to Consider Appellant's Age and Maturity at the Time of the Offense is Not Required

Appellant was 21 years old during the robbery and murder. He contends that the trial court neglected to consider his age and maturity in deciding whether he was a major participant in the robbery acting with reckless indifference to human life, and the matter should be remanded so this evidence can be considered. The People argue that the trial court is presumed to have fulfilled

16

its duty to properly implement the law, and therefore, remand is not warranted.  We agree with the People.  The law that made youth a relevant factor in the major participant/reckless indifference analysis was established when the trial court issued its ruling, and information about appellant's age and youth was part of the record considered by the trial court.

"Evidence Code section 664 provides that '[i]t is presumed that official duty has been regularly performed' and scores of appellate decisions, relying on this provision, have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . .  properly followed established law.' [Citation.]"  (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) The presumption does not apply where "the law in question was unclear or uncertain when the lower court acted."  (*People v. Jeffers* (1987) 43 Cal.3d 984, 1000.)

By the time the trial court issued its order in late May 2022, four published opinions had addressed the relevance of the defendant's youth and maturity to the major participant/reckless indifference analysis.  In *People v. Harris* (2021) 60 Cal.App.5th 939 (*Harris*), decided on February 16, 2021, the court concluded, in the context of analyzing the *Banks* factors, that the defendant's youth was a proper consideration.  (*Id.* at p. 960.)  On August 31, 2021, the court in *In re Moore* (2021) 68 Cal.App.5th 434, (*Moore*) stated: "We go one step further [than *Harris*] and hold that a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life.  Indeed, the 'hallmark features' of youth—'among them, immaturity, impetuosity, and failure to appreciate risks and consequences'—are arguably more germane to a juvenile's mental state than to his or her conduct.  [Citation.]"  (*Id.* at p. 454.)  Two

17

other cases, *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987 (*Ramirez*) and *Harper, supra,* 76 Cal.App.5th 450, also acknowledged that youth is an appropriate consideration in the *Banks/Clark* analysis.

Information about appellant's age and youth was presented to the trial court at and before the evidentiary hearing. Appellant attached to his petition a copy of the abstract of judgment, which states his date of birth as January 4, 1975. Furthermore, the trial transcript, marked as Exhibit 1 at the evidentiary hearing, contains references to the youth of appellant and his cohorts. In her closing argument, the prosecutor repeatedly referred to Bowman and Stewart as "girls," and she repeatedly described appellant, Farris, and Thompson as "young men."

While the trial court did not expressly discuss appellant's age in ruling on his petition, it was not required to do so,[7] and there is no affirmative indication that it refused to consider the point. (*People v. Stowell* (2003) 31 Cal.4th 1107, 114 ["[W]here a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order"]; contrast *People v. Chambers* (1982) 136 Cal.App.3d 444, 457 [presumption the court follows the law does not apply where the sentencing law is not yet established].)

Because the relevant law was established when the trial court issued its ruling, and the record contained information about appellant's age and youth, we presume the trial court

---

[7] Section 1172.6 does not require a statement of reasons following an evidentiary hearing. (Compare § 1172.6, subd. (c) [statement of reasons required if the court declines to make an order to show cause].)

properly applied the law and considered appellant's youth as part of the *Banks/Clark* analysis. (*Ross, supra,* 19 Cal.3d at p. 913.) There is no basis for a remand to consider further evidence.[8]

Any error in failing to consider appellant's youth was harmless, in any event. Reversal is not required unless it is "reasonably probable that a result more favorable to [the defendant] would have been reached in the absence of the error." (*Oliver, supra*, 90 Cal.App.5th at p. 489, fn. 8, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [applying *Watson* standard to the erroneous admission of evidence in a § 1172.6 hearing].) A review of similar cases and the circumstances of this one persuade us that it is not reasonably probable that consideration of appellant's youth would yield a result more favorable to him. (See *Oliver, supra,* 90 Cal.App.5th 466 at pp. 489–490 [23 year old knew accomplice planned to rob and kill victim; no evidence of peer pressure, "transient rashness," "inability to assess consequences," "impetuosity," or "failure to appreciate risks and consequences"]; *Harper, supra*, 76 Cal.App.5th at p. 472 [16 year old who carried one accomplice's shotgun and helped the other find a knife "did not act like an immature, naïve, or impulsive adolescent"].)

Evidence upon which the trial court relied indicated appellant choked Rainey, checked for a pulse, and choked him again. Ligature strangulation is a "prolonged manner of taking a person's life, which requires an offender to apply constant force to

---

[8] The cases cited in appellant's reply do not alter our conclusion. ~(ARB 15)~ (See *People v. Jones* (2022) 86 Cal.App.5th 1076 and *People v. Pittman* (2023) 96 Cal.App.5th 400.) In those cases, the caselaw discussing youth as a factor in the major participant/reckless indifference analysis was either nonexistent or new.

19

the neck of the victim [and] affords ample time for the offender to consider the nature of his deadly act." (*People v. Hovarter* (2008) 44 Cal.4th 983, 1020.) Appellant was far more intimately involved in the killing of his victim and acted with a more culpable state of mind than the youthful defendants in *Harper* and *Oliver*—both of whom were found to be major participants who acted with reckless indifference to human life. Notably, appellant has not explained how evidence of his youth or maturity might tip the *Banks*/*Clark* factors in his favor.

The "fact of youth cannot overwhelm all other factors," and appellant's youth is far outweighed by the *Banks/Clark* factors that show not merely appellant's indifference to Rainey's life, but his desire, willingness, and effort to cause Rainey's death. (*Mitchell*, *supra*, 81 Cal.App.5th at p. 595.) We conclude there was no reasonable probability that the failure to consider appellant's youth impacted the trial court's decision.

In sum, substantial evidence supported the trial court's conclusion that the People had proved, beyond a reasonable doubt, that appellant was a major participant in the robbery who acted with reckless disregard for human life. We presume the trial court considered appellant's youth as part of its analysis of the *Banks/Clark* factors, and we conclude that any failure to do so was harmless error.

## DISPOSITION

The order is affirmed.

                              MORI, J.

We concur:


        CURREY, P.J.


        COLLINS, J.